## CIRCUIT COURT OF FAIRFAX COUNTY

Curtis A. Stafford

v.

Anthony G. Hodges et al.

Case No. (Law) 97658

Sandra J. Hetrick

v.

John Ki Nam et al.

Case No. (Law) 102182

October 3, 1991

By JUDGE THOMAS S. KENNY

These cases each involve construction of the Virginia "fireman's rule," which limits the availability of normal tort remedies for certain public safety officers who are injured in the course of their official duties. The same issues are presented in both cases: is a police officer responding to an emergency call, who has not yet reached the scene of the emergency, covered by the fireman's rule?

If so, does the rule bar recovery for an injury from negligence unrelated to the emergency being responded to?

In *Stafford*, a police cruiser, with its emergency equipment activated, was responding to an emergency call on I-95 shortly after two o'clock in the morning. Before the officer reached the scene to which he had been dispatched, he collided with the wreckage of an earlier, unrelated accident, which had been abandoned by both drivers and left unmarked and unlighted in the left lane of I-95. The injured officer has sued Hodges, the driver of the car he collided with, alleging willful and wanton misconduct because Hodges had allegedly left the scene to sober up without putting out flares or other warnings; and Medders, the driver of the truck that Hodges collided with, alleging negligence for leaving the scene temporarily while he tried to get into position to mark the wreckage and call for help.

In *Hetrick*, the injured officer was responding to an emergency, with her emergency equipment activated, when an intoxicated driver coming in the opposite direction suddenly turned directly in front of her cruiser. The resulting collision killed the other driver and seriously injured the police officer. She has sued the decedent's estate, alleging gross negligence on decedent's part.

The truck driver in the *Stafford* case has demurred to the motion for judgment against him[1]; the other defendant in *Stafford*, and the defendant in *Hetrick*, have moved for summary judgment. All rely on the fireman's rule as the basis for their position.

In Virginia, the fireman's rule is grounded on the principle of assumption of risk. Simply stated, the rule says that a policeman or fireman who is carrying out his or her official duties has assumed the risk of those dangers that are inherently part of those duties, and as a result may not recover in tort from one whose negligence created the need for his or her performance. *C. & O. Railway Co.*

---

[1] The written demurrer has not been found in the court file. However, at oral argument, Medders' counsel, Mr. Furey, appeared and orally presented his grounds for demurrer. In order to proceed with this ruling, I am using those oral grounds as the basis for the demurrer, but Mr. Furey should submit a copy of his demurrer for the record.

*v. Crouch*, 208 Va. 602 (1968). An exception exists for those situations where the risk to which the officer is exposed is so extraordinary that it cannot be said to be an inherent part of the job, *Philip Morris Inc. v. Emerson*, 235 Va. 380, 405 (1988), or where a property-owner knows that a hidden dangerous condition exists on the scene and that a fireman or policeman is or will be on the premises, *Pearson v. Canada Contracting Co.*, 232 Va. 177 (1986). There has also been *dictum* in one Virginia case that the doctrine of assumption of risk may not apply where the injured person has incurred the risk in order to rescue a third person from imminent harm or where the injury was received as a result of the defendant's wanton and willful misconduct. *Commonwealth v. Millsaps*, 232 Va. 502 (1987).

Each of the foregoing cases involved officers who were injured while they were actually at the scene of the emergency requiring their services. Similarly, each of the circuit court opinions submitted by counsel, to the extent their facts can be discerned from the case, deal with the application of the fireman's rule to injuries received at the scene. *Boyce v. Cooper*, Hampton Cir. Ct. L22250 (3/23/89) (rule applied to trooper injured in high speed chase of John Doe); *Benefiel v. Walker*, Fairfax Cir. Ct. L99498 (ltr. op. 7/24/91) (rule applied to officer struck by second driver while issuing traffic ticket to first driver); *see also Newcomb v. Wright*, Chesapeake Cir. Ct. L23513-M (1/10/91) (fireman's rule applied to policeman injured in auto accident; unable to determine facts of case from order, but write-up of case in 3 *J. Civ. Litigation* 205 (1991) indicates officer collided with dirt bike while speeding en route to a fire, with lights and siren activated).

Plaintiffs concede that the fireman's rule would bar recovery against an ordinarily negligent defendant if the injuries were sustained on the scene of the emergency caused by such defendant. They contend, however, that because the officers here had not yet arrived at the scene of the emergency (the "zone of danger") to which they had been respectively dispatched, the fireman's rule has no application. Furthermore, they contend that

because the defendants did not cause the emergency in the first place, they cannot, as independent tortfeasors, claim the benefit of the fireman's rule. Finally, they contend that even if the rule applies, it would be defeated by the willful and wanton misconduct of Hodges and the gross negligence of Nam. Each of these contentions will be considered in turn.

### 1. *"Zone of Danger" Analysis*

Each of the reported Virginia appellate decisions and at least a majority of circuit court opinions, as noted above, deal with injuries received while the officers were actually on the scene of the very situation which called for their official functioning. Assumption of risk while within such a "zone of danger" is rather straight-forward. But when does a public safety officer enter such a zone of danger? Defendants Hodges and Medders urge that it is anytime the officer is on duty, so that even if Officer Stafford were on routine patrol at the time of the accident, he would be barred from recovery. They say that the language of the Supreme Court in *Millsaps* supports precisely this result, when it said:

> it has not been the policy of the law of Virginia to facilitate litigation by such public officers as a means of compensating them for injuries received in the line of duty, but rather to impose that burden on the public generally, through workers' compensation and other benefits.

*Millsaps*, 232 Va. at 509.

I disagree with the defendants. There is nothing in the Virginia law to support such a result, which seems unnecessarily expansive, and frankly, a windfall to the careless driver who would be "fortunate" enough to run into a police car instead of a civilian vehicle. *Millsaps* involved a claim arising out of an accident that occurred while a state trooper was attempting a "rolling roadblock" of the defendant at speeds in excess of 90 mph. The court's comments about workers' compensation, while a logical extension of prior court cases, were actually *dicta*, since the case involved a claim for property damage rather than

injury to the trooper. Even more significantly, they were made in the factual context of a clear "zone of danger" case.

A better statement of the policy issues involved in a case of this nature is found in *Ruhle v. Philadelphia*, 29 A.2d 784, 787 (Pa. 1943), where the court stated:

> It is one thing to say that a fireman who has gone into a danger zone must take what he gets, and quite another to say that a person who stops short of the danger zone cannot recover because he is a fireman.

In the absence of clearer guidance from the Supreme Court on this issue, I will hold that the fireman's rule applies only when the officer is in the "zone of danger" that appertains to the emergency on which he or she has been called. The position of Hodges and Medders that this zone covers an entire eight-hour shift (*i.e.*, anytime an officer is in uniform and on duty) is rejected.

On the other hand, Defendant Nam agrees that the rule should apply only in the zone of danger, but his position is that this zone is not limited to the physical area in the immediate vicinity of the emergency. Rather, he says, the officer crosses into the zone of danger as soon as he is dispatched to the emergency. In other words, says Nam, when the officer activates his lights and siren, and sets himself officially apart from the rest of the traffic on the road, then he has entered the zone of danger and assumed the risk associated with the emergency and all of the events involved in responding to it, including driving to the scene.

Plaintiffs, of course, contend that the zone of danger is limited to the actual scene. Their position is essentially that a fireman assumes the risk of fighting the fire, but not the risk of his fire engine colliding with another vehicle on the way.

I do not believe that either Nam's or plaintiffs' positions can be applied rigidly to serve as a "bright line" test for application of the fireman's rule. Just as one can posit circumstances where a trooper speeding to an emergency scene could, for example, assume the risk of spinning out of control on a curve, one can equally

well posit circumstances where an officer on his way to a scene would use the utmost caution and could not be said to have assumed anything. The mere activation of emergency equipment, without more, should not result in public safety officers becoming fair game[3]. On the other hand, an officer even miles from the scene may, by his or her conduct, demonstrate that the risk has been voluntarily assumed. The point is that the determination of when the danger zone has been entered, when one is considering a point remote from the actual scene of the emergency, is inherently fact-based. When it is contended that a defendant's negligence subjects the officer to an undue risk, not inherently involved in the normal pursuit of his duties, the issue of the officer's assumption of the risk becomes one of fact for the jury rather than a matter of law. *Millsaps*, 232 Va. at 510.

For this reason, then, I decline to accept either the plaintiffs' view that the danger zone is narrowly drawn around the scene, or the defendant Nam's view that it automatically is created when the officer's emergency equipment is activated. I will leave it to the jury to decide whether either of the officers in these cases assumed the risk of the accidents that occurred.

## 2. "Independent Negligence" Analysis

It is surprising that there is so little authority in Virginia on the issue of whether a public safety officer, who is injured by the negligence of one who is totally unrelated to the emergency being responded to, is barred from pursuing a claim against that independent tortfeasor. Only two cases under Virginia law have been found which seem to directly address this issue[4]. In *Benefiel v. Walker*,

---

[3] If this were the rule, an undesirable side effect might be that officers would be more reluctant to activate their equipment while responding to a scene, thereby lengthening their response time and perhaps increasing the risk of traffic accidents en route.

[4] The Chesapeake Circuit Court case of Newcomb v. Wright, supra, also apparently involved an independent tortfeasor, but as described above, this information is gleaned from a journal write-up and is not part of the order in the case.

*supra*, Judge Stevens of this court dealt with a police officer who was injured while he was writing a traffic ticket. The officer had stopped behind a motorist in the right-hand travel lane of Route 7, and while sitting in his cruiser, with emergency lights activated, he was struck from behind by another motorist. Judge Stevens declined to create an exception to the fireman's rule in this case, saying that the Virginia Supreme Court "has focused on assumption of the *inherent risks of the job* and *foreseeability*, regardless of what brought the officer to the scene originally." (Emphasis in original.) Since it was entirely foreseeable and an inherent risk that an officer who is stopped in a travel lane on Route 7 may be rammed from behind, Judge Stevens applied the fireman's rule and barred recovery, notwithstanding the defendant's independent negligence.

On the other hand, in *Johnson v. Teal*, Civil Action 91-00081-A (E.D. Va. Mem. Op. 7/11/91), Judge Ellis dealt with a case, similar to the one at bar, in which an officer responding to a burglary call was injured *en route* in an accident allegedly caused by the defendant's negligence. In denying summary judgment for the defendant, Judge Ellis held that Virginia courts would create an exception to the fireman's rule for independent acts of negligence.

These diverging views of Virginia law are not as difficult to reconcile as would first appear. Basically, each of these cases is correct if one adopts the principle that independent negligence will create an exception to the fireman's rule if, and only if, it creates a hazard that is outside the normal risk assumed by the public safety officer. This is perfectly consistent with the holdings of *Millsaps*, *Pearson* and *Philip Morris*, and is simply another way of saying that the officer has assumed the inherent risks of the job.

In *Benefiel*, Judge Stevens (correctly, I believe) impliedly found as a matter of law that being rammed from behind was an inherent risk of stopping in a travel lane. In *Johnson*, Judge Ellis was apparently satisfied that it was *not* an inherent risk that a motorist would disregard a "yield" sign and cause an accident to a motorcycle traveling fifteen miles an hour with full emergency equipment activated.

In a clear-cut case, such as those above, the fact pattern may justify a holding as to an inherent risk as a matter of law. I do not believe that these cases are yet in that posture. I am not prepared to rule as a matter of law that a police officer responding to an emergency scene runs the inherent risk that a drunk will steer into her or that a motorist will abandon a darkened wreck in the fast lane of an interstate highway. I will let the jury decide those issues in its determination of whether the respective officers had in fact assumed those risks.

### 3. "Willful and Wanton/Gross Negligence" Analysis

If the fireman's rule is found to apply to an officer *en route* to an emergency who is injured by an independent tortfeasor, it may still not prevent recovery if the tortfeasor's behavior amounts to "willful and wanton" conduct. As noted in *Millsaps*, "[w]hen the defendant's conduct is found to be willful and wanton, the defense of assumption of risk may be entirely barred." *Millsaps*, 232 Va. at 510. This statement was simply *dictum* in that case, because the court noted that the issue of willfulness and wantonness was never presented to the jury. Nevertheless, it makes good sense, and in the absence of any indication that it does not properly reflect the Supreme Court's thinking on this point, I will rule that it will apply in this case.

Here, defendant Hodges is accused of willful and wanton conduct, in that he was driving while intoxicated at the time of the original collision with Medders, and subsequently left the scene without marking the wreckage or reporting it to authorities. A jury could find that this conduct was willful and wanton. *See Booth v. Robertson*, 236 Va. 269 (1988)[5]. If it so found, then the fireman's

---

[5] The simple fact of Hodges' intoxication, of course, is not enough to support a finding that his conduct was so malicious as to be wanton and willful. Baker v. Marcus, 201 Va. 905 (1960). However, the entirety of his conduct needs to be looked at in order to determine if it showed such a conscious disregard for the rights of others or such criminal indifference as to justify such a finding. See Hack v. Nester, 241 Va. 499 (1991).

rule would not be a defense to Stafford's claim against Hodges.[6]

Not so clear is the position of defendant Nam. No Virginia authority has indicated whether gross negligence would also defeat the fireman's rule. However, the defense of assumption of risk may be asserted generally in gross negligence cases in Virginia. *Stoner v. Robertson*, 207 Va. 633 (1966). Thus, since the fireman's rule is essentially an assumption of risk rule, it would seem that the gross negligence of a defendant would not defeat its effect if the rule otherwise applied.

To some extent, the question as to Nam may become moot, because the plaintiff has moved to amend her motion for judgment to allege willful and wanton misconduct on Nam's part. Since I have already indicated that I intend to let the case go to trial anyway on the jury questions of whether Officer Hetrick had entered the "danger zone" and whether she had assumed the risk of injury from an independent tortfeasor, I will grant the motion for leave to amend and let this issue go to the jury as well.

For the foregoing reasons, the motions for summary judgment by defendants Hodges and Nam are denied.

Defendant Medders has demurred. Normally, a demurrer based on an affirmative defense (such as assumption of risk) would not be sustained, since the defendant has the burden of proving that defense in his own case; however, where the plaintiff's own pleading shows that he has assumed the risk, the pleading is subject to demurrer. *Cf. C. & O. Railway Co. v. Schwartz*, 115 Va. 723 (1913). This does not appear to be the case here, for the same reasons that I am denying summary judgment. Accordingly, the demurrer is overruled, and Mr. Furey will file an answer within twenty-one days of the date of this letter.

---

[6] I have not been asked to rule on whether other defenses, such as contributory negligence, might apply to either of these cases and expressly decline to do so.